We'll proceed with the first case on the oral argument calendar this morning, which is Romo v. Springs Window. Are you ready? Yes, Your Honor. Ian Silverberg, telephonically, on behalf of the appellant. All right. You may proceed. Thank you, Your Honor. May it please the Court, I'd like to first thank the Court for allowing me to appear telephonically this morning. This matter is on appeal based on the trial court's grant of summary judgment. The first issue, there were two positions. It's a failure to promote based on race case, as the Court is aware. The first issue which led the trial court to grant summary judgment was as to the material coordinator's position. And the Court found that the plaintiff had failed to provide evidence of pretext, relying solely on the fact that there was an absence of Hispanics in upper management. It's respectfully submitted to the Court that there was more evidence of pretext submitted in opposition to the summary judgment motion. First of all, we had the issue that there was a pattern of no promotions, no Hispanics in upper management. We have irregularities in the hiring process, outstanding evaluations on behalf of the appellant. And there is also this overriding issue of not hostility towards people speaking Spanish in the workplace. The Court relied on the Bergine, I believe it is, decision in stating that circumstantial evidence needs to be specific and substantial. And it's respectfully submitted to the Court that the evidence that was presented in opposition to summary judgment was far greater than that presented in the Bergine decision. There's also the issue of the irregularities in the hiring process. We have a situation where people were preselected. And it's on that basis, Your Honor, that we believe that there was ample evidence of pretext submitted on the issue of the material coordinator position. The next issue was that of the Group Lead 2 position. The trial court held there that the plaintiff simply failed to make a prima facie case because of the qualifications. She was not qualified for the position. Here, the problem I had with that, Your Honors, was that there's issues of fact that these qualifications were even related to the job. It is undisputed that the appellant was able to perform the job and had performed that job routinely and had received accolades for her performance. We also have issues where Wade Berry, one of the higher-ups at Springs, didn't have those qualifications either. Counsel? Yes, Your Honor. This is Judge Beeser. Let me ask you this. Did the job notice that went out before any of the interviewing took place and so on, did that require a computer level of qualification? I believe it did indicate that Excel 1 and 2 were required. And she entered one of those classes and didn't complete it? She testified at her deposition that she took both the classes but only had a certificate for the first one. Okay. So you concede that she did not meet the strict requirements of the vacancy notice? I will concede that, Your Honor. Okay. Thank you. But in that same line, I would indicate, Your Honor, that there is no showing, and it's something that I raised in summary judgment, that these qualifications were job related. In fact, that's even strengthened more by the fact that the appellant was able to perform that job and received accommodations for what she did. Does it follow that she was the best qualified applicant for the job? Your Honor, I believe that there's a question of fact as to whether she was the best for the job. And I think that we've raised sufficient facts in our opposition to the summary judgment motion to let the jury decide that. Okay. Because she did have the proven track record of being able to perform that job. And that raised the issue of whether or not these qualifications were even legitimate in the first instance. I think we understand your argument. Do you want to save some time for rebuttal? I would. Thank you very much. All right. May it please the Court, I am Karen Taylor, and I represent Springs Window Fashions.  Thank you, Your Honor. There you go. That's much better. Okay. This case is all about fairness and generosity towards Ms. Romo, not discrimination. And they started that out with paying for her GED classes. They paid for those classes so that she could earn an education. They also paid for her XL1 and XL2 classes. And she did not go to XL2. And that's her deposition testimony. Her testimony was, question, but you didn't go to XL2? Answer, no, I don't recall if I did. No, I don't think so. And that's at $250. They also paid for the facilitating skills class. They also paid for the management class for her. They promoted her twice, and that's what the appellant is forgetting here. She applied for four promotions, got two of them when she was qualified. She simply was not qualified for the materials coordinator or the group lead two positions. To be qualified for the materials coordinator position, she had to be proficient, meaning well advanced or skilled in Excel. At that time, she didn't even have Excel training at all, and there's nothing in the record showing that she learned it herself. She could have done that. There's nothing showing that. She admitted, when her deposition was taken in 2005, that she still wasn't proficient in computers. So even at that time, she was not skilled enough for that position. There's also no dispute that she did not know Lotus Notes at the time. That was clearly required for the position. That was in the job description. And she repeatedly was told that she had to improve her communication skills. She had to go to a communications class as well. That is all undisputed. She admitted that in her deposition. The two people that made the decision for that particular position are Nancy Recchio and Gerald Jeerman, and there is no evidence whatsoever of any discriminatory motive by those two individuals. Counsel, your opposing counsel indicates that this were sent to a full trial. There may well be testimony this was pretextual, or even though it was in a requirement given in the job notice, it was not that necessary, or her minimal computer skills were really sufficient, and the real reason she didn't get the job is discriminatory. Why shouldn't this go to trial? I'm sorry? Why shouldn't this have a full trial instead of go on summary judgment? The record is undisputed. There is no evidence in the record that shows that Excel, the computer proficiency, was not required for the job. There's nothing. And she clearly did not have that qualification. It's in the documentation from the test that she took saying that she got a 60%, essentially failed the test. And then also in her deposition testimony saying that she wasn't computer proficient. That was required. And I don't see anything in the record saying that that is not a job qualification that is legitimate. There's nothing. There's just these conclusory statements saying that it's not, but there's no citations to the record for that whatsoever. If we conclude that there's a genuine issue of material fact concerning her qualifications and that she's established a prima facie case of discrimination, and we further assume that you have tendered a legitimate nondiscriminatory reason, do you think there's a genuine issue of material fact on pretext based on Mr. Berry's remarks? I don't. Mr. Berry's remark referred to all he was doing was enforcing the English-only policy, lawful, definitely here in the Ninth Circuit based upon Gerardo and Garcia. And that's all that he did. He was talking about a fire extinguisher. It was all about safety, and he was saying to her, essentially, you have to know English for safety reasons and for work reasons. And in her deposition, she admitted that. It was during work hours. It wasn't during breaks or anything like that. So he was only enforcing that legitimate, lawful policy with that particular statement. The issue about her filling in for her supervisor, there's been statements about that. The record shows that all she did when she was supposedly filling in was she resolved a dispute between two coworkers. Any worker can do that. It doesn't require a supervisor to do that. And she still didn't perform Excel or computer duties when she filled in for her supervisor. She admitted in her deposition she didn't issue a disciplinary notice on that occasion or ever. She hadn't conducted performance evaluation. She also admitted that all she did was tell her supervisor, here's my opinion of other workers' performance. Anybody can do that as well. She was not performing the supervisory duty. The evidence does not support it. She makes the conclusory statement, but there's no backup for it at all, no specific evidence. The upper management position issue, she cites to one statement by Mr. John Lanham, and he says, I personally did not know of anyone who was Hispanic as a department head. That's not supported by the record. First, it's conclusory. He has no personal knowledge. And second of all, it's not supported by the record because at the relevant time, there were eight department heads. Three of them were Hispanic. Three were Caucasian. I'm sorry, three were Asian Pacific Islander, and two were Caucasian. So that's not supported at all by the specific evidence provided. From the year 2002 to 2005, and 2005 is the briefing of the summary judgment motion, 80% of Springs employees were Hispanic. There's no evidence with respect to the upper management issue that a Hispanic employee applied for the position, was qualified for the position, was denied the position, and that only relates to six positions out of the 309 employees at Springs at the time. Definitely not statistical evidence that's relevant to show discriminatory motive. And the district court on this particular issue simply got it right. The Bergen case that the appellant refers to, in that case, the court held it was the aggregate of the factors. It wasn't just no women supervisors, which we have here. We have Hispanic supervisors. But it was also the changes to the selection criteria. We don't have that at all here. There were no changes, nothing that would favor the individual selected or any changes at all, and there's no evidence that the plaintiff, Ms. Romo, was singled out. That was another factor in that case. And all of these cases that talk about pretext, it's an aggregate of factors. It's not one thing. Here we don't have one. There's also no record of a pattern of discriminatory treatment towards Hispanics, a pattern of not being promoted. She applied for four. She got two promotions. There's nothing else in the record of anyone not being promoted. And the evidence that we've submitted is in the year 2000, we went from 2000 to 2004, 66 percent of the individuals who were promoted at Springs were Hispanic. The next year it was 58. The next year it was 80. Eighty percent of Hispanics promoted. The next year it was 55 and then 57. Clearly not discriminatory. Are there any Hispanics in upper-level management in the company? At the time, no, there were not. The six positions, there were not. That's not determinative. We just don't have the plaintiff did not submit the evidence of did anyone even apply. We don't know the background of that whatsoever. The plaintiff made a couple of statements. With respect to the materials coordinator position, Ann Bell was not pre-selected. That argument would refer to group lead, but the issue there is Wade Berry simply knew her qualifications. That would happen in any job. You work around people. You know what they're good at, what they're not good at. He knew that, but they went through the interview process. They got applications, interviewed everyone, and selected someone based upon their qualifications. His statement in that regard was, she's the most qualified. That shows they did look at qualifications. One more issue is that she took the Excel class it was given after Ann Toscarino was awarded the position for group lead two in 2001, and the plaintiff makes an issue of that. But the bottom line is she knew Excel was required for that position. She knew computer proficiency was required for that position. She made no effort whatsoever to produce any evidence of her learning it at the time, of her going out and taking a class on her own, and she essentially gave up. She did not take that Excel 2 class, and she got a 60% on the test. She was not required for any position whatsoever that required computer proficiency, and that's clear from the record. I'd like to reserve some time. Actually, you don't get rebuttal on this. I'm sorry. And your time has expired, so why don't you sum up in a couple of sentences on your position. The plaintiff makes a lot of comments about arguments about pretext. We don't even get there in this case. We don't get past she's got to be qualified for both positions, or then the other factor element of she's got to be more qualified than the individual's chosen. There are just a number of factors where it's clear that the individual's chosen were more qualified for each position. She doesn't even get to that point. But then the pretext arguments aren't there either. They're either about non-decision makers, about lawful policies like the English only policy, or issues that don't show discriminatory motive towards Hispanics. There's no pattern, and that's essentially it. So summary judgment should be affirmed. Thank you. Mr. Silverberg. Thank you, Your Honor. I'll be very, very brief. As to her proficiency to do the job that she was doing for Mr. Mike Thomas, the evidence on the record is that she got kudos, and this is through the testimony of John Lannan, that she would assume his role, and best job ever. He doesn't ever have to worry about anything while Evelyn was there. She's clearly performing this job, and I think what that does is it raises the issue of material fact as to the legitimacy of these qualifications and the fact that there's no Hispanics in the upper tier of management. While they may be getting promoted at the lower tiers, clearly by the spring zone admission, they don't make it to the upper tier. I think a jury should have had the opportunity to review the facts of this case. Any questions? Thank you, counsel. Thank you both for your arguments this morning, and the case just heard will be submitted. Thank you very much, and thanks again for the opportunity to appear telephonically. Yes. You're welcome.
judges: Farris, Beezer, Thomas